## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

STETSON POINTE RETAIL CENTER, LLC,

     Plaintiff,

v.

OWNERS INSURANCE COMPANY,

     Defendant.

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW** Plaintiff, STETSON POINTE RETAIL CENTER, LLC, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, OWNERS INSURANCE COMPANY, and in support of its Complaint, allege and aver as follows:

### PARTIES

1.     Plaintiff, Stetson Pointe Retail Center, LLC ("Plaintiff" or "Stetson Pointe") is a Colorado limited liability company with its principal office in Colorado Springs, Colorado.

2.     Stetson Pointe, LLC, has one member, Fred Robinson, domiciled in Colorado Springs, Colorado.

3.     Upon information and belief, Defendant, Owners Insurance Company ("Owners"), is an insurance company licensed with the State of Colorado with the Division of Insurance engaged in the business of issuing property and casualty insurance policies insuring commercial and other properties in the State of Colorado.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

5.      Stetson Pointe is the owner of property that is located at 5885 Stetson Hills Boulevard, Colorado Springs, Colorado 80923.

6.      The Property is covered with an EPDM roofing system measuring approximately 9,467.67 square feet.

7.      The Property includes approximately 1,065.96 square feet of standing seam metal awnings extending outward from the north and west elevations.

8.      Stetson Pointe purchased a Policy of insurance from Owners under Policy Number 134632-74687506-15 (the "Policy"). A true and accurate copy of the Policy is attached hereto as **Exhibit "A."**

9.      The Policy is an all risk policy of insurance.

10.     The Policy is a replacement cost value policy and covers loss to the Property.

11.     The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

12.     Hail and wind are covered causes of loss under the terms and conditions of the Policy.

13.     The Policy provides for the repair, rebuild or replacement of damaged materials with other materials of like kind and quality.

14.     The Policy does not require that the Property sustain functional damage for coverage to be afforded to for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

15.     The Policy does not include a cosmetic exclusion.

16.     Under the Policy, Owners agreed to adjust all losses fairly and timely.

17.     Stetson Pointe paid the premiums due under the Policy in a timely manner.

18.     Stetson Pointe performed all duties and responsibilities required of it under the Policy.

19.     On or about July 28, 2016, during the Policy period, the Property suffered direct physical loss and/or damage resulting from hail and/or wind.

20.     The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

21.     The direct physical loss and/or damage resulting from the hail and/or wind storm caused cuts, tears, and punctures to the EPDM membrane roofing system covering the Property.

22.     The direct physical loss and/or damage resulting from the hail and/or wind resulted in functional damage to the Property.

23.     The direct physical loss and/or damage resulting from the hail and/or wind prevented the EPDM roofing system covering the Property from continuing to function as a barrier to entrance of the elements to the same extent as it did before the hail damage occurred.

24.     The direct physical loss and/or damage resulting from the hail and/or wind has diminished the long-term service life of the EPDM roofing system covering the Property.

25.     The direct physical loss and/or damage resulting from the hail and/or wind was timely reported to Owners.

26.     Owners assigned Claim Number 214-0000637-2016 to the Property loss.

27.     Owners assigned its claims adjuster, Gary Baade, to investigate and adjuster Stetson Pointe's claim for direct physical loss and/or damage to the Property resulting from hail and/or wind that occurred on or about July 28, 2016.

28.     Owners retained a Texas based independent adjusting firm, Catastrophe Specialists, Inc. ("Catastrophe Specialists"), to investigate the direct physical loss and/or damage to the Property resulting from hail and/or wind that occurred on or about July 28, 2016.

29.     Catastrophe Specialists performed a site inspection of the Property on August 12, 2016.

30.     On or about September 5, 2016, Catastrophe Specialists generated a damage estimate which outlined $27,354.73 in replacement cost value damages to the Property ("Catastrophe Specialists Estimate"). A copy of Catastrophe Specialists Estimate has been attached hereto as **Exhibit "B."**

31.     The Catastrophe Specialists Estimate included only eleven-line items.

32.     The Catastrophe Specialists Estimate did not include covered damages including, among other line items:

- EPDM roofing system covering the Property
- Appropriate pricing for the replacement and removal of the standing seam metal roof awnings
- Composition shingle roofing system covering the Property
- Detachment and resetting of twelve rooftop units in order to replace EPDM roofing system
- Commercial supervision
- Permit fees
- Temporary fencing and toilets
- General contractor overhead and profit

33.     Catastrophe Specialists Estimate improperly excluded general contractor overhead and profit.

34.     In adopting Catastrophe Specialists Estimate, Owners has failed to indemnify Stetson Pointe for all covered damages to its Property resulting from the hail and/or wind storm that occurred on or about July 28, 2016.

35.     On or about February 2, 2018, Stetson Pointe's contractor, Central States Roofing, provided Owners with a damage estimate outlining $274,833.55 in replacement cost value covered damages to the Property ("Central States Damage Estimate"). A copy of Central States Damage Estimate is attached hereto as **Exhibit "C."**

36.     On or about February 12, 2018, Owners retained HAAG Engineering ("HAAG"), an outcome-oriented engineering firm, to investigate damages resulting from a hail and/or wind storm that occurred on or about July 28, 2016.

37.     HAAG performed a site inspection of the Property on February 15, 2018.

38.     On or about March 7, 2018, HAAG provided a copy of its inspection report to Owners ("HAAG Report").

39.     The HAAG Report noted that hailstones of 2.50" in diameter or larger were reported within three miles of the Property on July 28, 2016.

40.     The HAAG report indicated that the steel vents, powered vents, and cabinets of the rooftop units on the roofing system featured hail stone dents of approximately three inches across.

41.     The HAAG report indicated that the EPDM roofing system had cuts, tears, and punctures to the membrane.

42.     Despite observing cuts, tears, and punctures to the EPDM membrane, HAAG improperly concluded that the EPDM membrane was not damaged by hail.

43.     Owners reassigned the claim to a new adjuster, Eric Roth, to investigate and adjuster Stetson Pointe's claim for direct physical loss and/or damage to the Property resulting from hail and/or wind that occurred on or about July 28, 2016.

44.     As a result of Owners' poor investigation, Stetson Pointe was forced to retain C3 Group, Inc. ("C3 Group"), a Colorado licensed public adjusting firm, to assist in the investigation and adjustment of Stetson Pointe's claim for direct physical loss and damage to the Property resulting from a hail and wind storm occurring on July 28, 2016.

45.     C3 Group performed a site inspection of the Property on May 15, 2018.

46.     C3 Group's inspection revealed short and narrow tears to the EPDM membrane roofing system covering the Property.

47.     On or about June 7, 2018, Stetson Pointe's representative, C3 Group, provided Owners with a comprehensive damage estimate outlining $230,573.79 in replacement cost value covered damages to the Property ("C3 Group Damage Estimate"). A copy of C3 Group's Damage Estimate is attached hereto as **Exhibit "D."**

48.     Stetson Pointe's Damage Estimate not only provided a line by line breakdown of covered damages, but also included seventy-five photographs illustrating the significant direct physical loss and/or damage resulting from the hail and wind storm occurring on or about July 28, 2016.

49.     Owners' failure to pay the claim in full has resulted in a breach of contract.

50.     Owners' failure to pay Stetson Pointe's claim in full has resulted in an unreasonable delay and denial in covered benefits without a reasonable basis.

51.     Owners' failure to pay the claim in full has resulted in financial hardship to Stetson Pointe.

52.     It is apparent from Owners' conduct that Owners has adopted a plan or approach to delay, as much as possible, its handling and payment of the claim.

53.     Plaintiff has fulfilled all duties required of it under the Policy after discovery of the loss.

54.     Plaintiff has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Owners.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

55.     Plaintiff realleges and reaffirms Paragraphs 1-54 as if fully set forth herein.

56.     Stetson Pointe purchased an all risk policy requiring Owners to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

57.     The Policy between Stetson Pointe and Owners is a binding contract.

58.     Stetson Pointe paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Owners.

59.     Owners has denied certain covered damages and continues to delay and deny certain claimed damages.

60.     Owners' failure to honor its obligations under the Policy is a breach of contract.

61.     Owners' breach of contract has damaged, and continues to damage, Stetson Pointe.

62.     Stetson Pointe is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, Stetson Pointe Retail Center, LLC, respectfully requests this Court enter judgment against, Defendant, Owners Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

63.     Plaintiff realleges and reaffirms Paragraphs 1-62 as if fully set forth herein.

64.     Under the Policy and Colorado law, Owners had a duty to act reasonably and in good faith in the handling of Stetson Pointe's claim.

65.     Under the Policy and Colorado law, Owners had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Stetson Pointe.

66.     Under the Policy and Colorado law, Owners had a duty to act with ordinary, reasonable diligence in determining the amounts due and owing under the Policy in question.

67.     Under the Policy and Colorado law, Owners had a duty to act with ordinary, reasonable diligence to pay all amounts due and owing pursuant to the Policy in question.

68.     Under the Policy and Colorado law, Owners owes Stetson Pointe the duty of good faith and fair dealing.

69.     At all times material hereto, Owners had the non-delegable duty to investigate the claim objectively and to not look for ways to deny benefits or attempt to not pay the full amount owed.

70.     At all times materials hereto, Owners owed Stetson Pointe the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

71.     At all times material hereto, Owners had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

72.     Owners sold Stetson Pointe the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

73.     Owners knew that the Policy was purchased to protect the Property in the event of a loss.

74.     Stetson Pointe has cooperated with Owners in the processing of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

75.     Stetson Pointe has cooperated with Owners in the investigation of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

76.     Stetson Pointe has not erected any obstacles to Owners' ability to investigate Stetson Pointe s claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

77.     Stetson Pointe has not erected any obstacles to Owners' ability to evaluate Stetson Pointe's claim for covered benefits resulting from a hail and/or wind storm occurring on or about July 28, 2016.

78.     Owners disregarded the validity of Stetson Pointe's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about July 28, 2016.

79.     Owners failed to treat Stetson Pointe's interests with equal regard to its own.

80.     Owners failed to conduct a full, fair, and prompt investigation of the claim.

81.     Owners underpaid Stetson Pointe's claim without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

82.     More specifically, Owners did not indemnify Stetson Pointe for covered damages to the EPDM roofing system covering the Property.

83.     Owners underpaid Stetson Pointe's claim by failing to objectively evaluate Stetson Pointe's claim based on all available evidence, and not just evidence which Owners believes supports its position.

84.    Owners decision to underpay the benefits owed to Stetson Pointe was intentional and not accidental.

85.    Owners knew that its denial to pay the benefits owed under the Policy would cause Stetson Pointe financial hardship.

86.    Owners failed to assist Stetson Pointe with the presentation of its claim.

87.    Owners breached its duty of good faith and fair dealing by failing to conduct a proper investigation of the loss.

88.    Owners breached its duty of good faith and fair dealing by conducting an outcome-oriented investigation of Stetson Pointe's loss.

89.    Owners breached its duty of good faith and fair dealing by underpaying Stetson Pointe's claim without having documented a reasonable investigation based upon all information.

90.    Owners breached its duty of good faith and fair dealing by failing to pay for all direct physical loss and/or damaged resulting from a hail and/or wind storm occurring on July 28, 2016.

91.    Owners failed to conduct a thorough and timely investigation of Stetson Pointe's claim in accordance with insurance industry claims handling standards and practices.

92.    Among other circumstances, Owners has committed unfair settlement practices including, without limitation:

(a)    Owners has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

(b)    Owners has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(c)    Owners refuses to pay claims without conducting a reasonable investigation based upon all available information;

(d)    Owners has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

    (e)    Owners has compelled Stetson Pointe to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions by such insureds;

    (f)    Owners has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

    (g)    Owners has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

    (h)    Owners encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the State of Colorado.

93.    Owners claims representatives, including Gary Baade and Erick Roth, received incentive-based compensation to close quickly or reduce claim payments.

94.    Owners claims representatives receive income-based compensation to reduce claims payments made to Stetson Pointe on its claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

95.    Owners improperly denied Stetson Pointe's claim by providing financial incentives to its personnel, including Gary Baade and Erick Roth, to determine claims handling.

96.    Owners improperly set various claims handling goals to reduce the amount paid on claims.

97.    Owners improperly denied Stetson Pointe's claim to reduce overall claims payments.

98.    Owners improperly denied Stetson Pointe's claim to increase profits.

99.    Owners improperly denied Stetson Pointe's claim to maintain its loss ratio.

100.    Owners improperly denied Stetson Pointe's claim to meet department goals.

101.    Owners' conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Stetson Pointe.

102.   Owners improperly denied Stetson Pointe's claim by motivating its claims department to pay less on claims than are otherwise owed.

103.   Owners improperly denied Stetson Pointe's claim to reduce the average amount paid on overall claims.

104.   Owners has committed unfair claim settlement practices as alleged in the preceding paragraphs of Stetson Pointe's Complaint.

105.   Owners' conduct constitutes a bad faith breach of the insurance contract.

106.   Owners has committed such actions with such frequency as to indicate a general business practice.

107.   As a direct and proximate result of Owners' actions, Stetson Pointe has:

   (a)   incurred increased costs to repair, restore and/or replace the significant property damage;
   (b)   suffered damages as a proximate result of the misconduct alleged; and
   (c)   suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, public adjuster costs and fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Stetson Pointe Retail Center, LLC, respectfully requests this Court enter judgment against Defendant, Owners Insurance Company, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits
Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

108.   Stetson Pointe re-alleges and reaffirms Paragraphs 1-107 as though fully set forth herein.

109.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

110.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

111.    Stetson Pointe is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

112.    Owners delayed payment of covered benefits without a reasonable basis for its actions.

113.    Owners denied payment of covered benefits without a reasonable basis for its actions.

114.    Among other circumstances, Owners has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Stetson Pointe's Complaint.

115.    Owners delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

116.    Owners delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate without having documented a reasonable investigation based upon all information.

117.    Owners delayed and denied payment of covered benefits without a reasonable basis for its action by providing Stetson Pointe with an inadequate settlement offer.

118.    Owners delayed and denied payment of covered benefits without a reasonable basis for its action by omitting obvious covered damages in an effort to effectuate a deceptively low settlement.

119.    Owners delayed and denied payment of covered benefits without a reasonable basis for its action by retaining an outcome-oriented engineering firm.

120.    Owners delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring evidence of direct physical damage to the roofing systems covering the Property resulting from hail and/or wind.

121.    Owners delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring evidence of functional damage to the roofing systems covering the Property.

122.    Despite clear evidence of covered damages to the Property, Owners continued to delay and deny indemnification of its own insured without a reasonable basis for doing.

123.    Owners' actions in the adjustment of Stetson Pointe's claim demonstrates an unmistakable complete delay of its Insured's benefits without a reasonable basis for its actions.

124.    Owners unreasonably denied and delayed payment of covered benefits without a reasonable basis for its action by forcing Stetson Pointe to retain its own professionals to help properly adjust the loss.

125.    Despite receipt of Stetson Pointe's comprehensive estimate, Owners denied and delayed payment of covered benefits without a reasonable basis for doing so.

126.    Despite receipt of photographs illustrating short and narrow tears to the EPDM roofing system, Owners denied and delayed payment of covered benefits without a reasonable basis for doing so.

127.    Owners unreasonably delayed and denied Stetson Pointe's claim to reduce overall claims payments.

128.    Owners unreasonably delayed and denied Stetson Pointe's claim to increase profits.

129.    Owners unreasonably delayed and denied Stetson Pointe's claim to maintain its loss ratio.

130.    Owners unreasonably delayed and denied Stetson Pointe's claim to meet department goals.

131.    Owners unreasonably delayed and denied Stetson Pointe's claim by providing financial incentives to its personnel to determine claims handling.

132.    Owners unreasonably delayed and denied Stetson Pointe's claim by motivating its claims department to pay less on claims, such as Stetson Pointe's claim for damages, than what is otherwise owed.

133.    Owners unreasonably delayed and denied Stetson Pointe's claim to reduce the average amount paid on overall claims.

134.    Owners unreasonably delayed and denied Stetson Pointe's claim by asserting coverage positions that it knew were without merit.

135.    Owners' actions were intended to dissuade Stetson Pointe in pursuing benefits due and owing under the terms of the policy in bad faith.

136.    Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Stetson Pointe Retail Center, LLC, respectfully requests this Court enter judgment against Defendant, Owners Insurance Company, for damages authorized

pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

**REQUEST FOR JURY TRIAL**

137.     Stetson Pointe requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 26th day of July, 2018

/s/ Jonathan E. Bukowski
Larry E. Bache, Jr., Esq.
Colorado Bar No.: 51958
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614
Timothy G. Burchard, II
Colorado Bar No.: 48635
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com